IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALLIED WORLD SURPLUS LINES ) <br> INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SOUTHWESTERN ILLINOIS HEALTH ) <br> FACILITIES, INC. dba ANDERSON ) <br> HOSPITAL and KELLY M. VERFUTH ) <br> Individually and as Special Administrator of ) <br> the Estate of LAURA J. VERFURTH, ) <br> DECEASED, ) <br> Defendants. ) | Case No. 23-cv-02622 |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

On July 28, 2023, Plaintiff Allied World Surplus Lines Insurance Company filed this declaratory judgment action, pursuant to 28 U.S.C. §§ 2201 and 2202, against Defendants Southwestern Illinois Health Facilities, Inc. dba Anderson Hospital ("Anderson Hospital) and Kelly M. Verfurth ("Mr. Verfurth"), individually and as special administrator of the Estate of Laura J. Verfurth.[1] Plaintiff seeks a declaration that it does not owe a duty to defend or indemnify Anderson Hospital in an underlying wrongful death lawsuit brought by Mr. Verfurth, individually and as special administrator of the Estate of Laura J. Verfurth, Case No. 17-L-1242, in Madison County, Illinois Anderson Hospital was served on August 11, 2023. (Doc. 11). Now before the

---

[1] Mr. Verfurth is a nominal defendant. Following entry of a stipulation to be bound, the claims against Mr. Verfurth were dismissed without prejudice.

Court is Plaintiff's Motion for Default Judgment. (Doc. 17). For the reasons detailed below, the Motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

### *A. The Underlying Action*

This case arises from an underlying lawsuit filed on September 8, 2017 by Mr. Verfurth in Madison County, Illinois, *Kelly M. Verfurth, Individually and as Special Administrator of the Estate of Laura J. Verfurth, Deceased, v. Southwestern Illinois Health Facilities, Inc. dba Anderson Hospital, et al.*, Case No. 17-L-1242 (the "Underlying Action."). The Lawsuit asserts causes of action against Anderson Hospital for Medical Negligence/Wrongful Death (Count V) and Survival Action (Count VI). The decedent in the Underlying Action died on January 13, 2016 after being treated for sepsis at Anderson Hospital.

In the Underlying Action, Mr. Verfurth alleges that the defendants, including Anderson Hospital, were negligent because, among other things, they "[failed to "[f]ailed to recognize symptoms and signs and/or findings consistent with an established and/or brewing septic condition in Laura J. Verfurth"; "[f]ailed to recognize a septic condition as part of a differential diagnosis and/or failed to rule it out if such was considered to be part of the differential diagnosis for Laura J. Verfurth"; "[f]ailed to properly and/or timely consult with appropriate medical personnel or specialists in light of the symptoms, signs and/or findings consistent with an established and/or brewing septic condition in Laura J. Verfurth"; "[f]ailed to properly diagnose and/or treat Laura J. Verfurth's infection and/or septic condition"; and "[f]ailed to timely and/or properly refer Laura J.

Verfurth for further testing and/or observation, care and treatment in light of symptoms and/or findings indicative of a serious medical condition, including but not limited to, a continued and/or brewing infectious and/or septic condition." (Doc. 1-4). The Lawsuit alleges that the negligence of Anderson Hospital caused and/or contributed to Ms. Verfurth's death. (*Id*. at ¶ 20).

On February 5, 2016, Anderson Hospital notified Steadfast, the insurer of the underlying insurance of the medical incident. (Doc. 1 ¶ 17).

On October 20, 2017, Anderson Hospital, through counsel, filed an Appearance, Answer, and Jury Demand in the Lawsuit. (Doc. 1, ¶ 24).

The medical incident and lawsuit were first reported to Allied World on November 29, 2021. (Doc. 1 ¶ 2).

### B. *The Allied World Policy*

Allied World issued the Policy to Anderson Hospital for the Policy Period of March 1, 2015 to March 1, 2016. (Doc. 1, ¶ 10). The Policy contains a Limit of Liability of $10 million excess of the $5 million Limit of Liability of the Underlying Insurance issued by Steadfast Insurance Company ("Steadfast") and a $4 million per claim and $12 million aggregate self-insured retention. (*Id*.) The Insuring Agreement defines the scope of the excess coverage provided by the Policy. (*Id*. at ¶ 11). Section I. of the Policy states as follows:

> I.   INSURING AGREEMENT
>
>> The Insurer will provide the Insured with insurance excess of the Underlying Insurance specified in ITEM 4 of the Declarations for claims first made against the Insured during the Policy Period. Except as otherwise

provided in this Policy, coverage under this Policy will apply in conformance with the terms and conditions of, and endorsements to, the Primary Policy and any other Underlying Insurance. In no event will the coverage under this Policy be broader than the coverage under any Underlying Insurance. Coverage under this Policy will attach only after all Underlying Insurance has been exhausted by the actual payment of loss by the Underlying Insurers.

(Doc. 1-2, p. 11).

Section VI. of the Policy, as amended by Endorsement No. 4, contains the following notice and reporting requirements:

> VI.   NOTICES AND REPORTING OF CLAIMS:
>
> (A)   Reporting of Claims
>
> As a condition precedent to the Insurer's obligations under this Policy, the Insured will provide the Insurer with prompt notice of any claim under any Underlying Insurance, or any circumstance that could give rise to a claim under any Underlying Insurance, involving any of the following:
>
> 1. unexpected deaths;
> 2. unanticipated neurological, sensory and/or systemic deficits; brain damage; permanent paralysis, including, but not limited to, paraplegia and quadriplegia; partial or complete loss of sight of hearing; kidney failure or sepsis;
> 3. birth related injuries, including, but not limited to, maternal or fetal death; anesthesia related injuries; infant resuscitation; shoulder dystocia; cerebral palsy;
> 4. severe burns, including, but not limited to, thermal, chemical, radiological or electrical burns;
> 5. severe internal injuries, including, but not limited to, lacerations of organs; infectious process; foreign body retention; sensory organ injury; reproductive organ injury;
> 6. any sentinel event;
> 7. class action suits; or
> 8. any claim reserved in excess of the lower of $2,250,000 or 25% of the limits of the Underlying Insurance.
>
> (B)   Quarterly Loss Run Reports

        All claims and suits, including, but not limited to, those listed in subsection VI(A), should be summarized in a Quarterly Loss Run Report, which shall include, at minimum: a description of the nature of the claim, the date the claim was made, the date of loss, the claimant's name, the names of any involved parties, the status of the claim, and the amount of reserve established for each claim. The Quarterly Loss Run Report will serve as notice for those claims not subject to the above reporting criteria, and must be received by the Insurer, in writing (or electronically if the Insurer requests), no later than 10 days after the end of each calendar quarter.

(C)    Notices

        As a condition precedent to the Insurer's obligations under this Policy, the Insured will provide the Insurer with prompt notice of:

        1. any settlement offer that the Insured intends to make, or any settlement demand made by any claimant, involving any of the matters listed above under IV(A) or any offer or demand that may implicate coverage under this Policy;
        2. the payment of any claims under any Underlying Insurance;
        3. the cancellation or non-renewal of any Underlying Insurance;
        4. the modification of any Underlying Insurance by endorsement or otherwise; or
        5. any additional or returned premiums charged or allowed in connection with any Underlying Insurance.

(D)    Form and Delivery of Notice

        1. The entity named in ITEM 1 of the Declarations will be the sole agent for, and will act on behalf of all Insureds, with respect to all matters under this Policy including, but not limited to, reporting claims under VI(A), Quartery Loss Runs required under VI(B), giving notice under VI(C), and any communications regarding coverage under this Policy.
        2. Notice to any of the Underlying Insurers of matters listed in VI(A) or VI(C) will not be deemed sufficient to establish reporting or notice to the Insurer. Notice of a matter listed in subsections VI(A) or VI(C) must be sent in writing by certified

>mail, express overnight mail, or prepaid courier to the Insurer at the address specified in ITEM 5 of the Declarations.

### C. Notification

On November 29, 2021, Anderson Hospital notified Allied World of the Medical Incident and Lawsuit. (Doc. 1 ¶ 26). Anderson Hospital did not notify Allied World of the Medical Incident or Lawsuit prior to November 29, 2021. (*Id*. at ¶ 25).

## DISCUSSION

### A. Jurisdiction

The Court has subject matter jurisdiction over this case pursuant to the federal diversity statute, 28 U.S.C. § 1332. Plaintiff is an alleged citizen of New York, while both Defendants are alleged citizens of Illinois (Doc. 1, ¶¶ 4-7). The amount in controversy is alleged to exceed $75,000, exclusive of interest and costs as the effect of granting the relief would be to void coverage for a loss exceeding $75,000 in value. *See, e.g., RSUI Indem. Co. v. JMT Dev. Inc.*, 572 F. Supp. 3d 482, 486 (N.D. Ill. 2021) ("In the insurance context, both the cost of providing a defense and the potential cost of indemnifying [the insured] count toward the amount in controversy.") (internal quotations omitted).

### B. Default Judgment

A defendant must file its answer "within 21 days after being served with the summons and complaint." FED. R. CIV. P. 12(a)(1)(A)(i). A defendant who fails to do so may be found in default under FED. R. CIV. P. 55(a). Default judgment establishes, as a matter of law, that a defendant is liable to the plaintiff as to each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When a

defendant is found in default, all factual allegations in the Complaint are deemed admitted and may not be contested. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); in accord *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012); *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true."). "It is well-settled that the court has authority to enter declaratory judgments as well as default judgments for money damages." *See, Grinnell Mut. Reinsurance Co. v. Saldeen*, No. 21-CV-2148, 2022 WL 18779999, at *2 (C.D. Ill. Mar. 23, 2022); *W. World Ins. Co. v. Frieden*, No. 416CV04038SLDJEH, 2018 WL 9880231, at *6 (C.D. Ill. July 18, 2018); *W. Div. Nautilus Ins. Co. v. Front Range Env't, LLC*, No. 14 CV 50083, 2014 WL 4414516, at *2 (N.D. Ill. Aug. 6, 2014).

Default judgment pursuant to Rule 55(b)(2) must be entered by the Court, and the Court may conduct a hearing if it needs to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." FED. R. CIV. P. 55(b)(2). To procure a default judgment under Rule 55(b)(2) plaintiff must establish: "(1) when and against what party the default was entered; (2) identification of the pleading as to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the defendant is not in military services such that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2)." *See Blackburne & Sons Realty Cap. Corp. v. Anderson*, No. 18-CV-1115-NJR-RJD,

2019 WL 13204223, at *1 (S.D. Ill. Jan. 16, 2019) (citing *UMG Recordings, Inc. v. Stewart*, 461 F. Supp. 2d 837, 841 (S.D. Ill. 2006)).

Here, all requirements for entry of a default judgment under Rule 55(b)(2) are satisfied, and the Court does not find that a hearing is necessary. As discussed above, entry of default was entered against Anderson Hospital on September 6, 2023. (Doc. 13). Further, Anderson Hospital is not an infant or incompetent person or active duty in the United States military. The motion for default judgment also comports with FED. R. CIV. P. 54(c) by requesting relief that does "not differ in kind from, or exceed in amount" what has been demanded in the Complaint. Finally, Plaintiff has complied with Southern District of Illinois Local Rule 55.1(b) by mailing a copy of the motion to Anderson Hospital's last known addresses (Doc. 16 and Doc. 17, p. 12) (Plaintiff's counsel confirmed that Plaintiff gave notice to Anderson Hospital of the entry of default and its Motion for Default Judgment). Thus, the Court **GRANTS** the motion for default judgment against Anderson Hospital.

### C. Duty to Defend

This is an action for declaratory judgment, brought pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of determining Allied World's rights and legal obligations under an Excess Insurance Policy issued to Anderson Hospital for the Policy Period of March 1, 2015 to March 1, (the "Policy"). Plaintiff seeks a declaration that it does not owe a duty to defend Anderson Hospital with respect to the Underlying Action.

An insurer's duty to defend is determined by comparing the allegations in the underlying complaint to the relevant provisions of the insurance policy. *Health Care Indus.*

8

*Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 694 (7th Cir. 2009). "An insurer is obligated to defend its insured if the underlying complaint contains allegations that potentially fall within the scope of coverage." *Id*. (citing *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008), *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146 (2005)). In other words, an insurer may refuse to defend only if "it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Id*.

Plaintiff argues that no coverage exists because the undisputed facts demonstrate that, as a matter of law, Anderson Hospital's notice was unreasonable and no coverage is available under the Policy.

Under Illinois law, timely notice is not merely a technical requirement but a valid prerequisite to coverage. *AMCO Ins. Co. v. Erie Ins. Exch.*, 2016 IL App (1st) 142660, 49 N.E.3d 900, 908. Whether an insured's notice is unreasonably delayed depends on the facts and circumstances of the case. *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill.2d 303, 305 Ill. Dec. 533, 856 N.E.2d 338 (2006). If the insured's delay in notifying the insurer is not justifiable, the insured's failure to satisfy the notice requirements will absolve the insurer of its duties under the policy. *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 313 Ill. App. 3d 457, 465–66, 729 N.E.2d 915 (2000).

The Illinois Supreme Court has set forth five factors for courts to consider in assessing the reasonableness of an insured's delay in giving notice:

(1) the specific language of the policy's notice provision;

9

>   (2) the insured's sophistication in commerce and insurance matters;
>   (3) the insured's awareness of an event that may trigger insurance coverage;
>   (4) the insured's diligence in ascertaining whether policy coverage is available; and
>   (5) prejudice to the insurer.

*W. Am. Ins. Co. v. Yorkville Nat. Bank*, 238 Ill. 2d 177, 185–86, 939 N.E.2d 288, 293–94 (2010). Considering these factors, Plaintiff contends the undisputed facts demonstrate that, as a matter of law, Anderson Hospital's notice (which was not given until almost six years after the medical incident occurred) was unreasonable and no coverage is available under the Policy. (Doc. 7, pp. 9-11). *See Livorsi Marine, Inc.*, 222 Ill.2d at 305. As such, Plaintiff maintains, it owes no duty to defend.

By its default, Anderson Hospital has failed to dispute Plaintiff's contention that the Policy offers no coverage because the notice was unreasonable as a matter of law. Accordingly, the Court finds Plaintiff is entitled to default judgment as to Count I of the Complaint for Declaratory Judgment to the extent that it seeks a finding that Plaintiff has no duty to defend. As such, Plaintiff has no duty to defend Anderson Hospital in the Underlying Action.

### D.   *Duty to Indemnify*

In Count I, Plaintiff also asks the Court to declare that it has no duty to indemnify Anderson Hospital. It is well established that the duty to indemnify is narrower than the duty to defend. *Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 331 (7th Cir. 2021) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90 (1992)). The duty to indemnify is an insurer's duty "to reimburse the insured for losses it incurs directly or to pay sums that the insured becomes legally obligated to pay others." *Id.* (quoting *Keystone Consol.*

*Indus., Inc. v. Emps. Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006)). The duty to indemnify applies when the insured's claim "actually falls within the scope of coverage." *Id.* (quoting *Madison Mut. Ins. Co. v. Diamond State Ins. Co.*, 851 F.3d 749, 753 (7th Cir. 2017)).

In the Seventh Circuit, the "general rule" is that "a suit to determine an insurer's obligations to indemnify its insured is premature until the insured has been determined to be liable to somebody." *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 680 (7th Cir. 1992). "More precisely, the 'duty to indemnify [is] unripe until the insured has been held liable.'" *Citizens Ins. Co. of Am. v. Thermoflex Waukegan, LLC*, 588 F. Supp. 3d 845, 856(N.D. Ill. 2022) (citing *Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995)). Furthermore, in addition to concerns about justiciability, a court considering a declaratory judgment generally cannot "decide issues of ultimate fact that could bind the parties to the underlying litigation." *Shockley*, 3 F.4th at 331 (citing *Maryland Cas. Co. v. Peppers*, 64 Ill. 2d 187 (1976)). Thus, determining whether an insurer has a duty to indemnify the insured for a particular liability is only ripe if the insured has been found liable in the underlying litigation. *Id.*

Here, the record before the Court suggests that the Underlying Action remains pending in St. Clair County. Because determining whether Plaintiff has a duty to indemnify would require the Court to adjudicate facts in the Underlying Action, the Court denies that portion of Plaintiff's motion without prejudice.

## CONCLUSION

For these reasons, Plaintiff's Motion for Default Judgment against Anderson Hospital (Doc. 17) is **GRANTED in part and DENIED in part.** Plaintiff owes no duty to defend its insured, Anderson Hospital, in the Underlying Action pending in the Circuit Court of Madison County, Illinois, styled as *Kelly M. Verfurth, Individually and as Special Administrator of the Estate of Laura J. Verfurth, Deceased, v. Southwestern Illinois Health Facilities, Inc. dba Anderson Hospital, et al.*, Case No. 17-L-1242. However, Plaintiff's request for a declaration that Plaintiff owes no duty to indemnify Anderson Hospital is **DENIED, without prejudice**.

Defendant Kelly M. Verfurth, Individually and as Special Administrator of the Estate of Laura J. Verfurth, was previously dismissed from this action without prejudice following the filing of Mr. Verfurth's Stipulation to be Bound. (Doc. 19). In light of the above and of the Court's ruling herein, Judgment shall be entered in favor of Plaintiff Allied World Surplus Lines Insurance Company as follows:

Defendant Kelly M. Verfuth, Individually and as Special Administrator of the Estate of Laura J. Verfuth, is bound by the Court's coverage declaration.

All claims alleged against Defendant Kelly M. Verfuth, Individually and as Special Administrator of the Estate of Laura J. Verfuth, have been dismissed **without prejudice.**

Plaintiff Allied World Surplus Lines Insurance Company has no duty to defend Southwestern Illinois Health Facilities, Inc. dba Anderson Hospital in the Underlying Action pending in the Circuit Court of Madison County, Illinois, styled as *Kelly M. Verfurth, Individually and as Special Administrator of the Estate of Laura J. Verfurth, Deceased, v. Southwestern Illinois Health Facilities, Inc. dba Anderson Hospital, et al.*, Case No. 17-L-1242.

Plaintiff Allied World Surplus Lines Insurance Company's claim for declaratory judgment as to its duty to indemnify Southwestern Illinois Health Facilities, Inc. dba Anderson Hospital in the Underlying Action pending in the Circuit Court of Madison County, Illinois, styled as *Kelly M. Verfurth, Individually and as Special Administrator of the*

*Estate of Laura J. Verfurth, Deceased, v. Southwestern Illinois Health Facilities, Inc. dba Anderson Hospital, et al.*, Case No. 17-L-1242 is **DISMISSED** without prejudice as premature.

The Clerk of Court shall enter judgment accordingly and close this case.

**SO ORDERED.**

Dated: October 3, 2023

/s *David W Dugan*

------------------------------

DAVID W. DUGAN
United States District Judge